UNITED STATES of America,
Plaintiff–Appellee,

v.

Lupe GOMEZ, Defendant–Appellant.

No. 94–4049.

United States Court of Appeals,
Tenth Circuit.

Oct. 10, 1995.

Jill M. Wichlens, Assistant Federal Public
Defender (Michael G. Katz, Federal Public

Defender, with her on the briefs), Denver, Colorado, for Defendant–Appellant.

Gregory C. Diamond, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff–Appellee.

Before ANDERSON, McKAY and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Lupe Gomez appeals his conviction for distribution of cocaine, see 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, raising five issues. Mr. Gomez claims that (1) he was denied his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment; (2) the district court improperly admitted evidence obtained in the course of a court-ordered wiretap; (3) the district court erred in admitting the testimony of a government interpreter who had assisted in the transcription of the audiotapes obtained during the wiretap; (4) the district court erred in allowing the government to use transcripts of the tape-recorded conversations during its case in chief; and (5) the district court impermissibly answered questions from the jury when the defendant and defense counsel were not present.[1] We address each of these issues in turn and, for the reasons set forth below, affirm the conviction.

**BACKGROUND**

In early 1992, the Weber–Morgan Narcotics Strike Force began an investigation of Rogelio "Roy" Salinas, who was suspected of trafficking in marijuana. This investigation involved a number of law enforcement agencies in and around the Ogden, Utah, area.

As part of the investigation, an undercover officer, Weber County Sheriff's Deputy Douglas Coleman, began negotiating the purchase of a large quantity of marijuana from Salinas. Additionally, pursuant to Utah Code Ann. § 77–23a–10 (1990), the strike force obtained authorization for a wiretap on the telephone of the home where Salinas was living at the time.

As the investigation progressed, the focus shifted away from marijuana and toward Salinas' activities involving cocaine. Information gleaned pursuant to the wiretap revealed that Salinas had a source for cocaine in Ogden, known as "Bird" or "Bert" or "Burt."[2]

On February 24, 1992, Salinas called a pager number and was called shortly thereafter by a male who was identified at trial as "Bird." Bird reported to Salinas that he was calling from Layton, Utah, that he was on his way, and that he had "it." R.Supp. Vol. X, Ex. 4. Salinas shortly thereafter paged Deputy Coleman, indicating that his source would be there soon, and the two arranged for the drug transaction to take place at a convenience store in Ogden.

Surveillance officers observed an individual, later identified as Mr. Gomez, approach Salinas's home, speak with Salinas as the two leaned over the bed of a pickup truck, and depart shortly thereafter. An officer conducting surveillance at the time testified that it appeared to be a delivery of cocaine. R.Vol. III at 82.[3]

Salinas then made a series of telephone calls to the undercover agent, Deputy Coleman, and drove to the prearranged location for the delivery.[4] When Salinas verified that Deputy Coleman was at the prearranged location, he returned to his house, reached into

---

1. Mr. Gomez initially raised only the first four issues in this appeal. On February 10, 1995, Mr. Gomez moved to file a supplemental brief, raising the issue regarding the district court's answering of the jury's questions. We granted the motion on June 28, 1995, and Mr. Gomez filed his supplemental brief that same day.

2. There was considerable testimony at trial regarding the confusion over the individual's name. Some officers monitoring the calls thought the name was "Burt" or "Bert," while others identified the caller as "Bird." R.Vol. II at 136–37, 143–44; R.Vol. III at 11. According

to the government, the confusion regarding the individual's name arose, in part, because the monitored conversations were at times in English and at times in Spanish. Appellee's Br. at 4.

3. Two agents were conducting surveillance on Salinas's house from a house across the street. R.Vol. III at 31–32.

4. The delivery took place at a convenience store located a few blocks from Salinas's home. R.Vol. II at 39.

the back of the pickup at the point where he previously had been speaking with Mr. Gomez, and retrieved something. R.Vol. III at 39. Salinas returned to the delivery location with a kilogram of cocaine at which point he was arrested. Approximately ten minutes later, Mr. Gomez again drove past the Salinas residence at which point officers gave pursuit and arrested him.[5]

Mr. Gomez was charged in a federal complaint on March 11, 1992, and he was brought before a magistrate judge on March 19, 1992. A federal information was filed on March 30, a federal indictment charging him with distribution of cocaine was returned on April 4, and he was arraigned on April 17, 1992.

Following a number of continuances, Mr. Gomez was tried April 5–6, 1993, and convicted. He moved for a new trial on the basis that the wiretap evidence came to light only "a few days before trial." R.Vol. I, Docs. 56, 57. The government joined Mr. Gomez in a stipulation for a new trial. The stipulation specifically stated that "a new trial should be granted in order to allow the defense sufficient time to review the evidence and documentation regarding the wiretap." R.Vol. I, Doc. 60.

The case was retried November 22–24, 1993, and Mr. Gomez was again convicted. This appeal followed.

## DISCUSSION

## I. SPEEDY TRIAL

■ Mr. Gomez first claims that he was denied his statutory and constitutional right to a speedy trial, in violation of the Speedy Trial Act, 18 U.S.C. § 3162, and the Sixth Amendment. We review constitutional violations and the district court's compliance with the requirements of the Speedy Trial Act de novo, *United States v. Dirden,* 38 F.3d 1131, 1135 (10th Cir.1994); *United States v. Davis,* 1 F.3d 1014, 1017–18 (10th Cir.1993), accepting the court's factual findings unless clearly erroneous. *United States v. Pasquale,* 25 F.3d 948, 950 (10th Cir.1994).

*1. Speedy Trial Act*

■ The Speedy Trial Act requires that the trial of a criminal defendant commence within seventy days of the filing of the indictment, or from the date that the defendant first appears before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). The remedy for a violation of the Act is dismissal of the indictment. *Id.* § 3162(a)(2). However, the statute is not self-executing. It places on the defendant the burden of asserting a violation of the statute, explicitly providing that the "[f]ailure of the defendant to move for dismissal *prior to trial* or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." *Id.* (emphasis added); *see United States v. McKinnell,* 888 F.2d 669, 676 (10th Cir.1989) (holding that even if defendant had been "entitled to relief under section 3161(a)(2) [sic], he waived his rights to that relief by his failure to move for dismissal prior to trial"); *see also United States v. Alvarez,* 860 F.2d 801, 821 (7th Cir.1988) (citing cases), *cert. denied,* 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989).

■ Mr. Gomez does not dispute that he failed to raise his Speedy Trial Act claim prior to trial. Thus, the plain language of the statute itself dictates that he has waived any right that he may have had to dismissal of the indictment under section 3162(a)(2). *See McKinnell,* 888 F.2d at 676. Mr. Gomez argues, however, that notwithstanding his failure to comply with the Act, we must reverse his conviction for plain error. We disagree.

■ The decision to correct a plain error is within the "sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Olano,* 507 U.S. 725, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)); Fed. R.Crim.P. 52(b); *United States v. Overstreet,*

---

**5.** While the lengthy factual discussion in Mr. Gomez's brief suggests that there is a question regarding the identity of the individual who met with Salinas, and the government's brief likewise reflects an attempt to dispel any such notion, this purely factual matter is not before us on appeal. Thus, our recitation of the facts of the case, while somewhat less colorful than the parties', reflects our acceptance of the jury's implicit findings.

40 F.3d 1090, 1092 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). Rule 52(b) grants an appellate court the authority to correct "an 'error' that is 'plain' and that 'affects substantial rights'" *Olano,* 507 U.S. at ——, 113 S.Ct. at 1776; *United States v. Smith,* 24 F.3d 1230, 1233 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 270, 130 L.Ed.2d 188 (1994). However, as a prerequisite to plain error review under Rule 52(b), a court must first find that an "error" indeed has been committed.

 "Deviation from a legal rule is 'error' unless the rule has been waived." *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777. The obvious corollary to this statement is that "if there has been a valid waiver, there is no 'error' for us to correct." *United States v. Lakich,* 23 F.3d 1203, 1207 (7th Cir.1994). Waiver is defined as "an intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). And while the mere failure to timely assert a constitutional right does not constitute a waiver of that right, *id.* at 468, 58 S.Ct. at 1024–25; *see United States v. Wade,* 388 U.S. 218, 237, 87 S.Ct. 1926, 1937–38, 18 L.Ed.2d 1149 (1967); *Miranda v. Arizona,* 384 U.S. 436, 470, 86 S.Ct. 1602, 1625–26, 16 L.Ed.2d 694 (1966), a waiver of a statutory right may be valid even if it is not knowingly made. *See United States v. Robinson,* 8 F.3d 418, 421 (7th Cir.1993). The Supreme Court has

stated that "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777.

The "right at stake" in this case is a statutory right—created by Congress to benefit both the criminal defendant who awaits trial and the public who expect "speedy justice." *United States v. Saltzman,* 984 F.2d 1087, 1091 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993). However, just as the Act provides a remedy for violation of its speedy trial mandate, so too it unequivocally provides that the failure of a defendant to move for dismissal prior to trial constitutes a waiver of any right to that remedy. Congress has not included a requirement in the Act that the defendant's waiver be made knowingly and intelligently. Thus, by the clear terms of the statute itself, the defendant's failure to timely assert his right by filing a motion to dismiss the indictment prior to trial does indeed constitute a waiver of that right.[6]

In this case, Mr. Gomez failed to comply with the terms of the Speedy Trial Act requiring him to move for dismissal prior to trial. He has, therefore, waived his right to that remedy. As such, there was no error committed, and therefore nothing for us to review under Rule 52(b).[7]

---

**6.** Our holding on this point is not inconsistent with *United States v. Saltzman,* 984 F.2d 1087 (10th Cir.1993), where we held that a defendant, acting unilaterally, could not waive his right to a speedy trial under the Act. *Id.* at 1091. In *Saltzman,* the government's argument, which we rejected, was that the defendant had affirmatively waived his right to a speedy indictment. In this case, however, our finding of a waiver flows directly from the plain language of the statute itself.

Moreover, as the Second Circuit recently has recognized, in enacting the Speedy Trial Act, Congress specifically considered the circumstances under which the protections of the Act could be waived and ultimately "limited waiver of the 70–day speedy trial requirement to narrowly defined circumstances, i.e., a failure to move for dismissal prior to trial or prior to the entry of a guilty or nolo contendere plea." *United States v. Gambino,* 59 F.3d 353, 360 (2d Cir. 1995); *see United States v. Pringle,* 751 F.2d 419, 433 (1st Cir.1984) (citing S.Rep. No. 212, 96th

Cong. 1st Sess. 28–29 (1979)). Thus, our holding here, read together with *Saltzman,* simply confirms what the majority of circuits considering the issue have held: Congress has carefully defined the circumstances under which the protections of the Speedy Trial Act may be waived—i.e., failure to move for dismissal—and the individual defendant may not add to this. *See Gambino,* 59 F.3d at 359–60 (citing cases).

**7.** In support of his argument that a reviewing court, applying a plain error analysis, may review the merits of a Speedy Trial Act claim, notwithstanding the defendant's failure to move for dismissal prior to trial, Mr. Gomez cites *United States v. McKinley,* 23 F.3d 181 (7th Cir.1994). Unlike Mr. Gomez, however, we do not conclude that the Seventh Circuit's determination that the claim at issue is patently meritless indicates a rejection of its clear case law applying waiver. *See United States v. Alvarez,* 860 F.2d 801, 821–22 (7th Cir.1988).

*2. Sixth Amendment Right to a Speedy Trial*

 Mr. Gomez next argues that he has been denied the right to a speedy trial guaranteed him by the Sixth Amendment. This issue was not raised below. Unlike the statutory right to a speedy trial, a mere failure to assert the constitutional right does not constitute waiver. Thus, we review this claim for plain error. *Olano,* 507 U.S. ───────, 113 S.Ct. at 1776–77; Fed.R.Crim.P. 52(b). To constitute plain error, the district court's mistake must have been both obvious and substantial. *United States v. Meek,* 998 F.2d 776, 779 (10th Cir.1993).

 Determining whether a defendant's Sixth Amendment right to a speedy trial has been violated requires a careful balancing of the four factors enunciated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant. *Id.* at 530, 92 S.Ct. at 2192; *see United States v. Dirden,* 38 F.3d 1131, 1137–39 (10th Cir.1994); *United States v. Occhipinti,* 998 F.2d 791, 798 (10th Cir.1993); *United States v. Tranakos,* 911 F.2d 1422, 1427 (10th Cir.1990). "None of these factors, taken by itself, is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *United States v. Kalady,* 941 F.2d 1090, 1095 (10th Cir.1991) (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193).

 The length of delay is a threshold factor. Only if the delay is presumptively prejudicial need we inquire into the remaining *Barker* factors. *Dirden,* 38 F.3d at 1137. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971); *see United States v. MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1981). "Arrest," however,

means federal arrest. Arrest by state authorities on state charges does not trigger the speedy trial provisions of the Federal Constitution. *United States v. Allen,* 986 F.2d 1354, 1356 (10th Cir.1993).

 In this case, Mr. Gomez was arrested on federal charges on March 16, 1992, and he ultimately was brought to trial on April 5, 1993. Thus, there was a twelve and one-half month delay between his federal arrest and his trial. While we have observed that there is no "bright line beyond which pretrial delay will trigger a *Barker* analysis," *id.,* we are also cognizant of the Supreme Court's observation in *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year," *id.* at 652 n. 1, 112 S.Ct. at 2691 n. 1. While a longer delay is tolerable for more complex cases such as conspiracy, *see Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, in this case there was only one defendant; there was but a single count charged; and the drug trafficking prosecution was fairly straightforward. Thus, while we do not find the delay in this case especially egregious, *cf. Tranakos,* 911 F.2d at 1427 (six-year delay), we nevertheless believe that the delay, in excess of one year, triggers consideration of the other *Barker* factors.

The second *Barker* factor is the reason for the delay. The reasons set forth by the government for the delay are as follows: (1) the government requested a continuance, to which Mr. Gomez did not object, so that it could have time to prepare for trial; (2) the government requested a continuance, to which Mr. Gomez did not object, in the interest of continuity of counsel; (3) the government requested a continuance in the interest of obtaining the testimony of a witness, Roy Salinas; and (4) the district court continued the case sua sponte because another trial ran longer than expected. Appellee's Br. at 19–20; *see* Appellant's Br. at 29.

The weight given to each delay varies with its cause.

A deliberate attempt to delay the trial in order to hamper the defense should be

weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker,* 407 U.S. at 531, 92 S.Ct. at 2192; *Dirden,* 38 F.3d at 1138.

As the Supreme Court has observed, the defendant's assertion of his right to a speedy trial "is closely related to the other factors." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. In this case, Mr. Gomez never objected to the continuances which the government sought for preparation purposes and for substitution of counsel. Furthermore, there is no evidence before us that the government sought the continuances in order to gain a tactical advantage. *See United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971); *Perez v. Sullivan,* 793 F.2d 249, 255 (10th Cir.), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986). Thus, while the delay attributable to trial preparation and substitution of counsel weighs against the government, it is not substantial.

Regarding the delay due to the district court's scheduling conflict, as we stated in *Dirden,* "[a]lthough delay attributable to an overburdened [judge] weighs less heavily than an intentional delay on the part of the government attorney, the delay 'nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Dirden,* 38 F.3d at 1138 (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192). Thus, this delay weighs slightly against the government.[8]

As to the final reason for the delay—the unavailability of a witness—Mr. Gomez has directed us to nothing in the record which would dictate that this "valid reason," *see Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, should weigh against the government at all. In short, while we find the reasons for the twelve and one-half month delay less than fully justified, we by no means find them to weigh heavily against the government.

The third *Barker* factor is the defendant's assertion of his right to a speedy trial. As Mr. Gomez candidly admits, this factor weighs against him because he never asserted his right to a speedy trial. This is precisely the type of case to which the Supreme Court referred when it stated that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. This factor weighs heavily against Mr. Gomez.

The final *Barker* factor, the actual prejudice suffered by the defendant, also weighs heavily against Mr. Gomez. We analyze prejudice to the defendant in terms of three interests: preventing oppressive pretrial incarceration; minimizing concern and anxiety to the defendant; and limiting the possibility that the defense will be impaired. *Dirden,* 38 F.3d at 1138; *Kalady,* 941 F.2d at 1095. Of these, Mr. Gomez acknowledges that only the last is at issue in this case.

Mr. Gomez claims that he suffered actual prejudice at his second trial because Chrisni Sanchez was unavailable to testify due to pregnancy. Ms. Sanchez had testified at the first trial and her transcribed testimony was read to the jury at the second trial.[9]

This argument fails for two reasons. First, as we stated in *Tranakos,* "[p]rejudice occurs only when '*defense* witnesses are un-

---

8. We note that this delay was not extraordinary. The trial date was set for March 11, 1993, but because the district judge had another trial in progress at the time, the two-day trial was rescheduled and began approximately three weeks later on April 5, 1993.

9. In his brief, Mr. Gomez implies that the transcript reading is somehow suspect because it was read to the jury by "an employee of the United States Attorney's Office." We are unpersuaded

for two reasons. First, there is nothing in the record, beyond Mr. Gomez's own bald assertion, which establishes the individual who read the testimony of Chrisni Sanchez as an employee of the U.S. Attorney's Office. Second, Mr. Gomez points to nothing in the record which would have in any way diluted the trial court's instruction to the jury that the individual reading the transcript was "a completely neutral party." R.Vol. III at 133.

able to recall accurately the events of the distant past.'" *Tranakos,* 911 F.2d at 1429 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193) (emphasis in original). Ms. Sanchez's transcribed testimony was introduced in the second trial by the prosecution, not the defense, and Mr. Gomez has directed us to nothing in the record suggesting that, but for the delay, he would have called her as a defense witness in the second trial.

 Moreover, Mr. Gomez does not claim that Ms. Sanchez would have testified any differently at the second trial than she did at the first trial. Indeed, his argument essentially is that he has been denied the benefit that the emotional impact of Ms. Sanchez's testimony would have had on the jury: "Clearly the reading of a transcript does not have the impact of live testimony." Appellant's Br. at 32. Mr. Gomez fails to recognize, however, that the constitutional guarantee of the right to present evidence does not embody a right to make an emotional impact on the jury. Ms. Sanchez's testimony was properly before the jury and Mr. Gomez has suffered no prejudice. *Cf. Mancusi v. Stubbs,* 408 U.S. 204, 215–16, 92 S.Ct. 2308, 2314–15, 33 L.Ed.2d 293 (1972).

In conclusion, the Supreme Court has observed that the determination of whether a delay in any given case violates the Sixth Amendment must be evaluated on an *ad hoc* basis. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. In this case, considering the length of the delay, the reasons articulated by the government for the delay, Mr. Gomez's failure to assert his right to a speedy trial, and his failure to demonstrate how the delay prejudiced his defense, we hold that although the twelve and one-half month delay, while certainly lengthy, does not rise to the level of a constitutional violation.[10]

## II. ADMISSION OF WIRETAP EVIDENCE

 Mr. Gomez next claims that the district court erred in admitting evidence of the conversations recorded pursuant to the wiretap on Roy Salinas's telephone line. He claims that because the government failed to comply with the sealing requirement of 18 U.S.C. § 2518(8)(a), the phone conversations should have been suppressed.

Section 2518(8)(a) of Title 18 provides that [t]he recording of the contents of any wire ... communication ... shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.... The presence of a seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire ... communication or evidence derived therefrom under subsection (3) of section 2517.[11]

 By its clear language, Section 2518(8)(a) requires, as a prerequisite to the admissibility of a recording, that one of two criteria be satisfied: either the recording must have been properly placed under seal, or the government must provide a "satisfactory explanation" for its failure to comply with the sealing requirement. *See United States v. Ojeda Rios,* 495 U.S. 257, 263, 110 S.Ct. 1845, 1849, 109 L.Ed.2d 224 (1990). The sanction for the government's failure to comply with the statute, by the plain language of the statute itself, is suppression of the recording and evidence derived therefrom.

In this case, the government claims that the record reflects "ample evidence to create the presumption that the sealing require-

---

**10.** Citing *United States v. Carini,* 562 F.2d 144, 148 (2d Cir.1977), Mr. Gomez vigorously argues that a reviewing court should consider a violation of the Speedy Trial Act as a factor in determining whether a constitutional violation has occurred. We simply note that under the law of this circuit, analysis of a Speedy Trial Act claim is separate from analysis of a Sixth Amendment violation. *See Dirden,* 38 F.3d at 1136–39.

**11.** 18 U.S.C. § 2517(3) provides for the disclosure of wiretap communications "under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof."

ment was met." Appellee's Br. at 25. In support, the government has attached the affidavit of Lieutenant Steven R. Turner, commander of the Weber–Morgan Narcotics Strike Force, which states that the recordings were "sealed in a box" and placed in the Ogden City Police Department evidence room. Appellee's Br. app. 2 at 1. We find the government's contention disingenuous and contrary to law.

First, the "seal" to which the government affiant refers is a not the equivalent of sealing under court order. The order authorizing the wiretap in this case specifically required that "[i]mmediately upon the expiration of this Order, or extensions thereof, such recording shall be made available to the Court issuing this order and shall be sealed under the Court's direction. The custody of such recordings shall be where the Court orders, and maintained in accordance with the law." Appellee's Br. app. 1 at 6. This language is consistent with the Utah Interception of Communications Act, under which the wiretap was authorized, see Utah Code Ann. § 77–23a–10 (1995), as well as the federal statute currently at issue, 18 U.S.C. § 2518(8)(a). There is nothing in the record which suggests that the recordings were made available to the state court judge or that the recordings were ever sealed under the court's direction. Simply put, sealing several cassette tapes in an evidence bag in the police department's evidence room does not satisfy the sealing requirements of 18 U.S.C. § 2518(8)(a) or the specific order issued in this case. See United States v. Quintero, 38 F.3d 1317, 1329 (3d Cir.1994) (setting forth mechanism for sealing), cert. denied, —— U.S. ——, 115 S.Ct. 1263, 131 L.Ed.2d 142 (1995). Moreover, the government's argument runs completely counter to the purpose of sealing, which is to ensure that "subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded." Ojeda Rios, 495 U.S. at 263, 110 S.Ct. at 1849. The record does not reflect that the state court ordered custody of the tapes to be maintained in the police evidence room. Thus, the government appears to have had ample opportunity to access the tapes for any purpose.

In this case, the government failed to comply with the sealing requirement of 18 U.S.C. § 2518(8)(a). However, our inquiry does not end here. Mr. Gomez failed to raise this issue below: he did not move prior to trial for the suppression of the recordings or transcripts, nor did he object to the admission of them into evidence at trial. Generally, the failure to object to the admissibility of evidence is a waiver absent plain error. United States v. Jones, 44 F.3d 860, 875 (10th Cir.1995). Therefore, we must determine whether the admission of this evidence constitutes plain error. Fed.R.Crim.P. 52(b); United States v. Overstreet, 40 F.3d 1090, 1092 (10th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995).

Plain error review under Rule 52(b) is permissive, not mandatory. "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at ——, 113 S.Ct. at 1779 (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). As previously noted, to constitute plain error, the district court's error must have been both obvious and substantial. As to the latter, we have stated that "[t]he substantiality requirement of the plain error rule embodies a requirement that the defendant prove prejudice attributable to the error." United States v. Williamson, 53 F.3d 1500, 1521 (10th Cir.1995) (internal quotations omitted), cert. denied, —— U.S. ——, 116 S.Ct. 218, —— L.Ed.2d —— (1995) (no. 95–5197); see Olano, 507 U.S. at ——, 113 S.Ct. at 1778. The district court did not commit plain error in this case because the "error," if any, was neither obvious nor prejudicial.

The order authorizing the wiretap was issued by a state judge pursuant to state law. At his federal trial, however, Mr. Gomez did not move to suppress the tapes or the transcripts nor did defense counsel object at trial when the government attorney introduced them. R.Vol. II at 120–22. Thus, the federal district judge presiding over the proceedings below had no way of knowing that the government had not complied with the seal-

ing requirement of the wiretap order issued by the state judge or the federal wiretap statute, 18 U.S.C. § 2518(8)(a). To the extent that admission of the tapes was erroneous, therefore, the error was neither "obvious" nor "clear." *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777; *United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985). The error, if any, simply was not "plain."

█ Furthermore, Mr. Gomez has not demonstrated that the admission of the tapes was an error "affecting substantial rights." Fed.R.Crim.P. 52(b). In a case such as this, involving the government's failure to comply with the technical requirements of a statute, a defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights" prong of Rule 52(b). *Williamson,* 53 F.3d at 1521; *see Olano,* 507 U.S. at ——, 113 S.Ct. at 1778. Mr. Gomez claims that he has suffered prejudice because the tapes were "critical to the government's case." Appellant's Br. at 36. However, he has not alleged that the government tampered with the tapes or that the recordings are otherwise inaccurate. Nor has he demonstrated exactly how the tapes were of such paramount importance to the government. In short, he simply asserts that because the government failed to seal the tapes, the evidence should have been suppressed, and had the evidence been suppressed, he would not have been convicted. Thus, Mr. Gomez claims, the "prejudice" which he has suffered is the conviction itself.

█ Mr. Gomez misinterprets the focus of our prejudice analysis in the context of plain-error review. Our analysis centers not on the outcome of the trial—conviction or acquittal—but rather on the fairness and integrity of the proceedings themselves. Therefore, we ask simply whether the error, if any, "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *see Olano,* 507 U.S. at ——, 113 S.Ct. at 1779. Regardless of whether the tape recordings were "critical" to the government's case, Mr. Gomez has not directed us to anything in the record suggesting that the tapes were edited or tampered with in any way, that they were inaccurate, or that the proceeding itself was in any way rendered unfair by the government's failure to comply with the sealing requirement. Thus, we do not believe that the district court's failure to suppress the tapes affected the fairness, integrity, or public reputation of his trial. Accordingly, we hold that there was no plain error and the conviction should not be reversed on this ground.

## III. ADMISSION OF "EXPERT" TRANSLATION TESTIMONY

█ Mr. Gomez next contends that the district court erred in allowing Dennis Nordfelt to testify as an "expert" witness in Spanish/English translation. Mr. Nordfelt was a college student working part time for the Weber/Morgan Narcotics Strike Force during the investigation in this case and he assisted in translating the recorded conversations, portions of which were in Spanish. At trial, the government called Mr. Nordfelt as a witness through whom the transcribed conversations were admitted into evidence. He was neither offered by the government as an expert nor was he certified by the court as an expert in Spanish language.

Assuming that Mr. Nordfelt's testimony could properly be cast as that of an expert, Mr. Gomez did not object at trial to the admission of the expert testimony and, therefore, the issue is not properly before this court. *See United States v. Lira–Arredondo,* 38 F.3d 531, 533 n. 2 (10th Cir.1994). While we could review for plain error, *see United States v. Markum,* 4 F.3d 891, 896 (10th Cir.1993), we decline to do so here because the argument is so lacking in merit. *See Olano,* 507 U.S. at ——, 113 S.Ct. at 1778 ("Rule 52(b) is permissive, not mandatory.").

█ The district court's acceptance of an expert's qualifications will be disturbed only for a clear abuse of discretion, *United States v. Davis,* 40 F.3d 1069, 1075 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1387, 131 L.Ed.2d 239 (1995), and the court's discretion in determining the competency of an expert is broad. *Markum,* 4 F.3d at 896 (citing *Quinton v. Farmland Indus.,* 928 F.2d 335, 336 (10th Cir.1991)).

Prior to trial, Mr. Nordfelt received a degree with a minor in Spanish from Weber

State University. Additionally, he served a 23–month religious mission in South America where he developed his comprehension of the Spanish language. The trial court clearly could have found Mr. Nordfelt's qualifications sufficient to satisfy the liberal standard under Fed.R.Evid. 702 regarding expert qualifications, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993) (noting "liberal thrust" of Federal Rules of Evidence), and admission of such testimony would not constitute an abuse of discretion. *See United States v. Brown,* 540 F.2d 1048, 1053–54 (10th Cir.1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); *see also* Fed.R.Evid. 604 (interpreter as witness subject to qualification as expert). Finding no error, plain error review is not warranted. *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777.

## IV. ADMISSION OF TRANSCRIPTS

■ Mr. Gomez next argues that the district court erred in admitting transcripts of the recorded conversations. He first argues that the government laid insufficient foundation for the admission of the transcripts. He next objects to the government's use of the word "Bird" to identify one of the parties (putatively Mr. Gomez) in the transcripts.[12] And, he finally appears to raise a best evidence claim, arguing that the jury was never informed that the "primary evidence was the tape itself not the transcripts; and they were

never informed that, should they detect a discrepancy between the tape and the transcripts, the tape should control." Appellant's Br. at 49.

Mr. Gomez raises this issue for the first time on appeal.[13] He did not file a motion in limine to suppress the transcripts; he did not object to their admission at trial; he elected not to voir dire the witnesses offered by the government to authenticate the transcripts; he did not object to the prosecution's use of the transcripts as visual aids to the jury as the audio tape was being played; and he did not request a jury instruction directing the jury that the audio tapes were to control in the event that there were a discrepancy between them and the transcript. The failure of the defendant to object to the admission of evidence is a waiver absent plain error. *United States v. Jones,* 44 F.3d 860, 875 (10th Cir.1995).

■ The admission of transcripts to assist the trier of fact lies within the discretion of the trial court. *United States v. Mayes,* 917 F.2d 457, 462 (10th Cir.1990), *cert. denied,* 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991); *United States v. Mittleider,* 835 F.2d 769, 773 (10th Cir.1987), *cert. denied,* 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988); *United States v. Devous,* 764 F.2d 1349, 1354 (10th Cir.1985); *United States v. Watson,* 594 F.2d 1330, 1336 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). In light of this clear circuit precedent, we find Mr. Gomez's argument on this point wholly without merit.[14]

---

**12.** The government had placed in the left hand margin of the transcripts the name of the speaker. For example, one excerpt of the transcript is as follows:

CALL FROM BIRD TO ROY SALINAS
ROY: Hello.
BIRD: Hey.
ROY: Yeah?
BIRD: I'm on my way.
ROY: You are?
BIRD: Huh?

Appellant's Br. at 42.

**13.** Mr. Gomez contends that he in fact preserved the issue by objecting to the admission of the transcripts in the first trial on the grounds that "the tape is clearly the best evidence of all of this." Appellant's Reply Br. at 10. Citing *United States v. Mejia–Alarcon,* 995 F.2d 982, 985–88 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993), he claims that "the futility of an objection at the second trial, given

the court's previous ruling on the same issue, excuses his failure to renew the objection at the second trial." Appellant's Reply Br. at 10–11.

Mr. Gomez misstates *Mejia–Alarcon,* wherein we held that the defendant's motion in limine was sufficient to preserve the issue for appeal without the necessity for renewing the objection at trial. Furthermore, it is fundamental that, in cases where a new trial has been ordered, objections made during the first proceeding do not preserve issues for appeal in the second. *See United States v. Hill,* 60 F.3d 672, 675 n. 2 (10th Cir.1995).

**14.** Mr. Gomez's failure to raise any objection as to this issue is especially troubling given that the district court ordered the second trial for the specific purpose of allowing the defense "time to review the evidence and documentation regarding the wiretap." R.Vol. I, Docs. 60, 62. If Mr. Gomez had concerns relating to the admissibility

*See also United States v. Green,* 40 F.3d 1167, 1173 (11th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1809, 131 L.Ed.2d 733 (1995); *United States v. Scarborough,* 43 F.3d 1021, 1024–25 (6th Cir.1994); *United States v. Crowder,* 36 F.3d 691, 697 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1146, 130 L.Ed.2d 1105 (1995); *United States v. Durman,* 30 F.3d 803, 811 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995).[15] The record clearly reflects that the district court did not abuse its discretion in admitting the transcripts and, therefore, committed no error. Finding no error, we need inquire no further. *Olano,* 507 U.S. —, 113 S.Ct. at 1777.

## V. THE DISTRICT COURT'S ANSWERING OF JURY'S QUESTIONS

■■■ Mr. Gomez's final allegation of error is that the district court improperly answered questions from the jury during deliberations while neither he nor his counsel were present. After the jury began its deliberations, it sent the following note to the judge:

1. Cocaine brick—was it in a brown paper bag @ time of drug deal.
2. Information on truck bed
3. Would wife testify for Lupe Gomez
4. Layton
Judges Instructions
More Juice

R.Supp. Vol. XI at 3; Appellant's Supp.Br. attach. A.

Upon receiving the note, the district judge appeared in open court. The Assistant United States attorney was present, but neither Mr. Gomez nor his counsel were present.[16] The court stated that it had advised defense counsel

he could leave today, but I impressed upon him the importance of having a substitute attorney in the event we got some questions, and we've got some pretty important questions.... But I'm not going to delay the jury in getting the answers to these questions, and I find that the defendant through his attorney has waived the right to be present here in connection with answering these questions.

R.Supp. Vol. XIII at 2. The district court then discussed the questions with the Assistant United States Attorney on the record, and formulated the following handwritten response, which the court then sent in to the jury:

Dear Jurors:

This is in response to your questions using your same numbers:

1. It was not in the same brown paper bag at the time of the transaction.
2. As to the truck bed, I must ask you to base your decision on the evidence already presented to you on this subject at trial. The rules do not permit additional evidence at this time.
3. The same rule as stated in # 2 above applies here. Please do not consider whether the wife would or would not testify. Please base your verdict on the evidence and the law presented at trial.
4. I am sorry but I don't understand what you are asking on this question # 4 or your reference to "Judges Instructions." Please clarify if you wish further information.

David K. Winder

P.S. Please return these to the clerk at end of your deliberations.

R.Supp. Vol. XI at 1–2.

■■■ "[A] defendant is guaranteed the right to be present at any stage of the crimi-

---

of the transcripts, he had ample opportunity to raise them prior to the second trial.

**15.** While a cautionary instruction regarding the use of the transcripts as aids only in understanding the audio tapes would have been preferred, *see United States v. Robinson,* 707 F.2d 872, 877 (6th Cir.1983), the burden of requesting such an instruction rested squarely with Mr. Gomez. Because he failed to request such a cautionary instruction or to interpose an objection to the court's failure to give the instruction sua sponte,

and because we find no plain error in the instructions which were given, we reject this claim on appeal. *See United States v. Janus Indus.,* 48 F.3d 1548, 1559 & n. 3 (10th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 87, — L.Ed.2d — (1995); *United States v. Coslet,* 987 F.2d 1493, 1497 (10th Cir.1993).

**16.** The district court had unsuccessfully attempted to locate defense counsel. The record does not reflect if an effort was made to locate Mr. Gomez.

nal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987).[17] This right is further protected by Fed.R.Crim.P. 43(a) which requires the presence of the defendant "at every stage of the trial." *See Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975); *United States v. Carter,* 973 F.2d 1509, 1515 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993). Whether a defendant has a constitutional right to be present at a particular stage of his or her trial—that is, whether the stage is critical and fairness requires the defendant to be present—is a legal question which we review de novo. *United States v. Oles,* 994 F.2d 1519, 1525 (10th Cir.1993); *United States v. Santiago,* 977 F.2d 517, 521 (10th Cir.1992).

■ We previously have held that "[a] question from the jury must be answered in open court and only after providing counsel an opportunity to be heard." *Carter,* 973 F.2d at 1515. The interaction between the court and counsel in formulating an answer to the question is somewhat akin to the jury instruction conference, where the defendant's personal input will generally be minimal at best. *See Larson v. Tansy,* 911 F.2d 392, 395 (10th Cir.1990) (typically, jury instruction conference attended only by court and counsel); *cf. Rogers,* 422 U.S. at 39, 95 S.Ct. at 2094–95 (jury question tantamount to request for further jury instructions). Nevertheless, we have held that a defendant has a right to be present when the court responds to a jury question. *See Carter,* 973 F.2d at 1515; *United States v. de Hernandez,* 745 F.2d 1305, 1310 (10th Cir.1984). In this case, the district court formulated its answers to the jury's questions while on the record in open court, but neither the defendant himself nor defense counsel were present.

■ The experienced trial judge correctly recognized that a defendant may waive the constitutional right to be present during trial. *See Snyder v. Massachusetts,* 291 U.S.

97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) ("No doubt the privilege [to be present] may be lost by consent...."); *Tansy,* 911 F.2d at 396–97. "However, we indulge every reasonable presumption against waiver of fundamental constitutional rights" such as due process. *Tansy,* 911 F.2d at 396; *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *see Campbell v. Wood,* 18 F.3d 662, 672 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). In *Tansy* we recognized that even if defense counsel could waive defendant's right to be present—a question we need not decide today—defense counsel could not do so without first consulting defendant about the waiver and obtaining defendant's consent. *Tansy,* 911 F.2d at 396 n. 2. There is no such showing in the instant case. Thus, we cannot agree that the defendant waived his right to be present. Because defendant was not in fact present, Rule 43 was violated and constitutional error occurred, according to the law of this circuit. *See Carter,* 973 F.2d at 1515.

A finding of error, however, does not end our inquiry. A deprivation of the constitutional right to be present at every critical stage of the trial is still subject to harmless error analysis. *See Rogers,* 422 U.S. at 40, 95 S.Ct. at 2095; *United States v. Schor,* 418 F.2d 26, 30 (2d Cir.1969); *cf. Carter,* 973 F.2d at 1515–16. Because we are reviewing a constitutional violation, not simply a violation of Rule 43(a), we apply the harmless-error standard enunciated by the Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). We may uphold the conviction only if the error was "harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828; *see United States v. Widgery,* 778 F.2d 325, 329–30 (7th Cir.1985); *Krische v. Smith,* 662 F.2d 177, 178–79 (2d Cir.1981); *see also Tuttle v. Utah,* 57 F.3d 879, 881 n. 3 (10th Cir.1995); *cf.* Fed.R.Crim.P. 52(a).

We are convinced that the court's error was harmless. As to the first question, re-

---

**17.** "Although the [Supreme] Court has emphasized that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,' due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106–07, 108, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934)).

garding whether the cocaine were in a brown paper bag at the time of the transaction, the following exchange took place between the Assistant United States Attorney and Deputy Coleman, the undercover officer involved in the arrest of Mr. Gomez:

Q (Mr. Diamond) Okay. Officer, I'm going to hand you a brown paper bag and ask you to open that. First of all, how is it sealed?

A (Deputy Coleman) How is the bag sealed?

Q Yes.

A It's stapled with three staples.

Q Are you able to just pull the top and undo those staples and open the back?

A Oh, yeah.

Q Would you do that for us? If it would help I have some scissors here, Officer Coleman. Now, what have you removed from that bag, officer?

A This is the brick of cocaine that Roy [Salinas] handed me in his car.

Q Now, is there a yellow tag of any kind on that?

A Yeah. It says plaintiff's exhibit number 1.

Mr. Diamond: Your honor I would submit this as proposed exhibit number 1 at this time. I'm not ready to move its admission however.

The Court: All right.

Q (Mr. Diamond) You've indicated that that was the brick that you were given that night by Mr. Salinas. How do you recognize that, officer?

A (Deputy Coleman) I recognize it from the tape. This is the tape I was indicating earlier that was—there's a duct tape and there's masking tape, and there's the plastic wrap that's underneath that.

And this is—*he did not hand it to me in this plastic sack. This is ours. I got the brick as it is inside the bag.* And this is how I recognize it. This is how it was handed to me. . . .

R.Vol. II at 45–46 (emphasis added).

While it is true that as a general principle the jury—guided by the court's instructions—is to act as the sole fact finder, we do not believe that, in this case, the district court's answering of the question prejudiced Mr. Gomez in any way. He does not claim

that the court's answer was factually inaccurate, he simply claims that he should have had input into the answer. We fail to see, however, what Mr. Gomez or his counsel could have added to the court's answer.

Mr. Gomez cites two cases from the First Circuit, *United States v. Argentine*, 814 F.2d 783, 786–90 (1st Cir.1987), and *United States v. Hyson*, 721 F.2d 856, 865 (1st Cir.1983), for the proposition that the district court may not furnish a substantive response to the jury's request for factual information. Appellant's Supp.Br. at 8. We are unpersuaded.

The district court in *Argentine* had to draw inferences from testimony in order to answer a question from the jury which directly related to an element of the crime charged. *Argentine*, 814 F.2d at 786–87. Whether the cocaine involved in this case was or was not in a brown sack at the time of the transaction, however, has nothing to do with the elements of the crime of distribution, *see* 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1), and the court clearly did not have to draw any inferences from the testimony in order to provide an answer. Deputy Coleman's testimony was precise: "he did not hand it to me in this plastic sack. This is ours." R.Vol. II at 46.

*Hyson* stands simply for the unremarkable proposition that a district court has discretion to reread testimony of a witness to the jury. Such has long been the law of this circuit as well. *United States v. Brunetti*, 615 F.2d 899, 902 (10th Cir.1980). Indeed, in this case, the trial court very well could have reread the testimony of Deputy Coleman in response to the jury's question. We do not believe that, in light of the directness of Deputy Coleman's testimony, reversible error should turn upon the court's decision to answer the question directly instead of rereading thirty-two lines of trial transcript. The court's error in answering this first question was harmless beyond a reasonable doubt.

With regard to the other questions which were answered, Mr. Gomez contends that "although the answers ... were not necessarily improper, Mr. Gomez, through counsel, may have preferred and suggested other an-

swers." Appellant's Supp.Br. at 8. A finding of constitutional error does not turn on what a criminal defendant prefers; it turns on a determination that a mistake has been made which fundamentally affects the fairness of the proceeding. Because Mr. Gomez acknowledges that, with respect to questions number 2 through 4, no such mistake occurred, our analysis need proceed no further. The court's error in answering the questions was harmless beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, Mr. Gomez's conviction is AFFIRMED, and his motion to strike is DENIED.

The Appellant's motion to strike references in the supplemental brief of appellee to matters outside the record is GRANTED. The Appellant's motion for leave to file a supplemental reply brief is also GRANTED.

McKAY, Circuit Judge, dissenting:

I respectfully conclude that I must dissent in this case. I agree fully with all of the court's opinion except its conclusion that the admission of the wiretap evidence was not plain error.

The relevant statutory language makes clear that the government bears the burden of proving the admissibility of wiretap evidence. Title 18 U.S.C. § 2518(8)(a) specifically provides:

The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders.

As the majority readily admits, the sealing mandate was never complied with in this case. The statute further provides:

The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a *prerequisite* for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517. *Id.* (emphasis supplied).

I do not understand the court to suggest that the congressionally mandated sealing requirement was not plain either in its existence, its textual meaning, or its applicability to this case. Indeed, I agree with the court when it characterizes as disingenuous the prosecution's claim that the statutory sealing requirements were in fact met. While it is apparently true that in this case the trial court was not in fact aware of the statute, if its existence and applicability were not plain, then no statutory requirement could ever meet the threshold of being plain. The statute was enacted in 1968 and has been applicable in all wiretap cases since that time. 18 U.S.C. § 2518 (codifying Pub.L. 90–351, Title III, § 802, June 19, 1968, 82 Stat. 218).

As I understand it, the court's opinion is bottomed on the conclusion that the error must be substantial and the defendant has the burden to prove prejudice attributable to the error. While that is the general rule, I am persuaded that, through the language and purpose of this statute, Congress has made a deliberate decision to shift this burden to the prosecution even in cases where the defendant makes no objection at trial. The Supreme Court has made clear that some errors affect substantial rights even when prejudice cannot be shown. *See Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). Those cases are ones affecting particularly the "integrity" of the proceedings. The very purpose of section 2518(8)(a) "is to ensure the reliability and *integrity* of evidence obtained by means of electronic surveillance." *United States v. Ojeda Rios,* 495 U.S. 257, 263, 110 S.Ct. 1845, 1849, 109 L.Ed.2d 224 (1990) (emphasis supplied). Congress, not the courts, has mandated that this integrity be supplied by the sealing process as a "prerequisite" to its admission as evidence. It is obvious that Congress was not content to rely on the ability of the person objecting to the evidence to show tampering—normally an impossible task.

Indeed, the Supreme Court in *Ojeda Rios* rejected even the notion that the government

could cure its failure to seal wiretap evidence by putting on proof of non-tampering. 495 U.S. at 264–65. The Court reached that view based on Congress's choice—not its own. It is hard for me to see how the Court could hold in *Ojeda Rios* that the government could not cure the failure "timely" to seal the wiretap recording by showing evidence of non-tampering and consistently hold that the defendant has the burden to prove he was prejudiced by the total failure to seal it at all. Congress has determined that the integrity of the tapes be insured by specific sealing requirements. I believe this congressional choice presumes prejudice, and as such, the requirement of proof by the defendant that prejudice exists has been congressionally preempted. As the Supreme Court has pointed out:

> Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

*United States v. Giordano,* 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974). Thus, Mr. Gomez is entitled to a new trial in which the government's wiretap evidence is suppressed.

For the foregoing reasons, I respectfully dissent.