UNITED STATES of America, Plaintiff–Appellee,

v.

Mark L. NEFF, Defendant–Appellant.

No. 92–2172.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1993.

Decided Dec. 2, 1993.

Colin S. Bruce, Asst. U.S. Atty. (argued), Sherry K. Leckrone, Springfield, IL, for U.S.

William J. Conroy, Jr., Cantrall, IL (argued), for Mark L. Neff.

Before FLAUM and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.*

MANION, Circuit Judge.

Mark Neff was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Sometime after beginning its deliberations, but before rendering its verdict, the jury sent a note to the judge asking him to "please clarify some events for us." The judge not only answered the questions but did so with facts not in evidence; no transcript was made of the discussion approving these communications,

---

* Hon. John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

nor was the defendant present. This procedure caused a violation of Fed.R.Crim.P. 43(a), and a violation of the Sixth Amendment. Because the constitutional violation was not harmless, we REVERSE and REMAND.

## I. Facts

In April of 1991, Neff escaped from the New York prison where he was serving a sentence for burglary, and headed home to White Hall, Illinois. Somewhere along the way, Neff stole a car. Upon his arrival in White Hall, Neff yanked out the stereo system, drove the car into a drainage ditch and abandoned both the car and its plates. After this, he went to the home of his brother and sister-in-law, Terry and Valerie Neff, where he stayed until he was apprehended on April 25, 1991 by the Illinois State police.

Following Neff's arrest, Illinois State Trooper Meldrum spoke with Neff concerning the stolen car and stereo. Neff told Meldrum that the car stereo and speakers were at his brother's and sister-in-law's home, in a bag along with the rest of his personal belongings. Meldrum learned that Valerie was at that time at her sister's house; so he went there, picked her up, and proceeded to her home. When they arrived, Valerie escorted Meldrum into the room where Mark had been staying. There Meldrum spotted the car stereo and speakers sticking out of the top of a brown paper sack. When Valerie pulled out the speaker and stereo, the bag fell over and out came some of Mark's clothing as well as a .22 caliber revolver.[1] Valerie picked up the gun and Meldrum quickly took the gun from her. Meldrum asked Valerie if the gun belonged to her or her husband, who was also a convicted felon. Valerie responded that she had never seen the gun before.

Once he arrived back at the station, Meldrum showed Neff the gun and asked if it was his. Meldrum testified that Neff admitted to owning the gun. This confession was not recorded or put in writing. Meldrum asked the forensics lab to raise the obliterated seri-

---

1. This firearm had an obliterated serial number which made it illegal for anyone to possess it. 18 U.S.C. § 922(k).

al number. In the same request he specifically informed forensics not to take any fingerprints because he assumed the only prints that would show up would be his and Valerie's.

On June 20, 1991, Neff was indicted for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Trial commenced on February 4, 1992, and on February 5, 1992, the case was submitted to the jury. Some time after beginning its deliberations, the jury sent a written note to Judge Mills requesting that he "please clarify some events for us." Ex. 56. The jury's questions were: "(1) what time were the police at the house to take Mark into custody?; (2) was Mark released after questioning?; and (3) what time did officer Meldrum pick up Terry's wife and go to the house to get the stereo?" *Id.* The time 3:45 p.m. (presumably the time the questions were submitted) is written in the left margin of the note, in the same handwriting as the questions. *Id.* Below the jury's questions on the same sheet of paper is written the following:

ANSWERS:

(1) April 25th at approximately 5:00 P.M.

(2) No.

(3) April 25th at approximately 6:15 P.M.

*Id.* The answers are signed by Judge Mills and bear a time of 4:05 p.m. Unfortunately, we are unable to determine who was present when the questions were received, when the answers were given, or, for that matter, whether the answers were given in open court, because there is no transcript of any of these proceedings. Without a transcript of these proceedings, we have no idea whether Neff's attorney offered any objection to the judge's answers, nor whether Neff waived his right to be present during these proceedings. And the Assistant United States Attorney (AUSA) offered little enlightenment. At oral argument he acknowledged he was supervising the case, but that it was tried by an inexperienced assistant. He also did not know how the answers were determined nor how or whether the attorneys and the judge decided to communicate them to the jury. Based on this sparse record, the only things we *are* sure of—and with which both sides agree—are that Neff was not present, and

that these were the answers that were sent to the jury.

Shortly after receiving the judge's written answers the jury returned its verdict finding Neff guilty as charged. At sentencing Neff was classified as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and was sentenced to 262 months to be served consecutive to the New York burglary sentence, and five years of supervised release. Neff raises several issues for our review, but primarily we need to focus our attention on the district judge's communications with the jury.

## II. Analysis

Neff argues that the district judge's written communications with the jury violated his right to be present at every stage of trial as guaranteed under the Fifth and Sixth Amendments. He correctly notes that the district judge's manner of responding was highly irregular, and that the absence of any record of these proceedings only aggravated the problem. As to the harm suffered by these irregularities, Neff contends that had he been allowed to be present, he could have participated in any argument and possibly offered an objection. He also claims that by answering the jury's questions with facts not in evidence, the district judge essentially stepped in and directed findings of fact in favor of the prosecution thus depriving Neff of his right to trial by jury as guaranteed by the Sixth Amendment. We turn first to Neff's claim that the district court violated his right to be present.

■ A criminal defendant's right to be present at every stage of trial is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (citing *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970)), and is protected to some extent by the due process clause of the Fifth and (in state cases) the Fourteenth Amendment. *See Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (under due process, a criminal defendant has the right to be present "whenever his presence has a relation, reasonably

substantial, to the fullness of his opportunity to defend against the charge."). However, the defendant's right of presence has been codified under the Federal Rules of Criminal Procedure. Under Fed.R.Crim.P. 43(a)[2] a criminal defendant has a right to be present (if he desires) during all stages of his trial, which has been held to include the giving of supplementary jury instructions or other communications with a deliberating jury. *United States ex. rel. S.E.C. v. Billingsley,* 766 F.2d 1015, 1019 (7th Cir.1985) (citing *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975)); *United States v. Silverstein,* 732 F.2d 1338, 1348 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). The procedures a district judge should follow when presented with a communication from a deliberating jury were first set forth in *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). In that case the Supreme Court stated that in such instances: (1) the jury's questions should be answered in open court; and (2) defendant's attorney should be given an opportunity to be heard before the district judge responds to the jury's questions. *Id.* at 39, 95 S.Ct. at 2094. In *United States v. Burns,* 683 F.2d 1056 (7th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 821, 74 L.Ed.2d 1018 (1983), this circuit noted the significance of the defendant's rights under Fed.R.Crim.P. 43(a), and stated that "the district courts in this Circuit should make every effort to observe the procedures endorsed in the *Rogers* opinion." 683 F.2d at 1058 n. 1. We reaffirmed our seriousness in adopting the *Rogers* procedures two years later in *Billingsley,* where we held that a district judge, when faced with such communications from the jury, should either follow the procedures in *Rogers,* or obtain from the defendant himself a clear and knowing waiver on the record. *Billingsley,* 766 F.2d at 1020.

▆ In this case, the district judge followed a different procedure. At oral argument, the AUSA stated that this district judge's "usual" procedure in responding to a question from the jury would be to call up the attorneys for the government and the defense, and without a court reporter present, discuss with just the attorneys the jury's questions and ask them how they wished to respond. Of course without a transcript to go on, we have no idea whether this is the "usual" procedure or even whether this was the procedure followed in this instance. Perhaps because these jury questions at first glance appeared inconsequential, the judge and the attorneys took a short cut. If so, we cannot condone such a departure from the *Rogers* mandate. First of all, a record of these proceedings, whatever they were, is essential. If the district court had conducted its communications in open court as required by *Rogers,* then, pursuant to the Court Reporter's Act, 28 U.S.C. § 753(b), the district court would have been required to have a court reporter present at the proceedings. *See United States v. Nolan,* 910 F.2d 1553, 1559 (7th Cir.1990), *cert. denied,* 499 U.S. 942, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991). A complete record would enable us to determine whether the defendant knowingly and voluntarily forfeited any objection to the irregularity. *See Billingsley,* 766 F.2d at 1020. However, given the short time period between the submission of and response to the jury's questions (about 20 minutes), it is highly doubtful that Neff personally waived his right to be present during these proceedings.

The government's attorney acknowledged—as he must under *Rogers*—that the district court's procedure coupled with its failure to have a court reporter present during these communications was highly improper, but asked that we excuse the junior prosecutor from any blame for these failings because this was only her second or third trial, and she probably had never faced this situation before. Maybe so,.but it was Neff's only trial (at least with respect to this crime) and he was entitled to have the government and the district judge follow the well-established procedure when presented with questions by

---

2. Rule 43(a) provides in full:

The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

a deliberating jury. Without a record, there is no apparent justification for the district court's failure to follow the procedures set forth in *Rogers*. Thus, we have a clear violation of Neff's right to be present under Rule 43(a).

Normally, in cases where a district court's communications with the jury violates Rule 43(a), we assess the impact of that violation using a Rule 52 "harmless error" inquiry.[3] *Silverstein*, 732 F.2d at 1348. However, we cannot limit our determination to whether this procedural violation of Neff's right of presence under Rule 43(a) constituted reversible error because we are confronted with a more significant question that resulted from the judge's communications. These questions from the jury were not the usual run-of-the-mill jury requests asking either that they be reinstructed on a point of law or be allowed to rehear evidence that had previously been introduced and developed at trial. Instead, these questions were really requests for evidence which had not been presented at trial, and which the jury apparently thought was necessary in reaching its determination. Neff claims that the judge, instead of refusing to answer the jury's requests, or reminding them that they are to make their determinations based on the evidence presented at trial, proceeded to answer the questions himself, and did so based on "facts" that were never in the record. Neff maintains that by answering the jury's questions with facts outside the record the judge not only plugged a hole in the government's case, but also invaded the jury's province as fact finder.

It does appear that the judge's answers introduced additional facts that are not found in the evidence presented at trial. The jury first asked what time the White Hall Police took Neff into custody, to which the judge responded "approximately 5:00 p.m." No evidence was presented at trial that would support that answer. Terry Neff testified that the police came to his home and took Mark to the police station for further questioning; however, we see nothing in the record stating

what time this occurred, much less that it occurred at "approximately 5:00 p.m." The jury next asked if Neff was released after questioning, and the judge told them no. This is a closer call. While there is no explicit testimony that Neff was detained after his initial questioning, it can be inferred from certain testimony that he was. For example, the evidence shows that the police took Neff to the police station and that after this Officer Meldrum came and spoke with Neff concerning the stolen car and stereo. From this one could reasonably infer that Neff was not free to leave after being first questioned by the White Hall police. But that inference was to be drawn by the jury as fact finder—not by the judge. *See United States v. Argentine*, 814 F.2d 783, 788 (1st Cir.1987) (in a criminal trial, disputed issues of fact may not be removed from the jury's consideration). Moving on to the judge's last answer—that Meldrum picked up Valerie Neff at approximately 6:15 p.m.—we find that it suffers from the same defect as the first. Officer Meldrum testified that he met Valerie Neff at her sister's house, and then proceeded to her home to find Neff's sack of personal belongings; however, nothing in the record indicates just what time of day (or night) this occurred. At oral argument the AUSA insisted that clear evidentiary support exists in the record for this last answer. He claimed that page 171 of the transcript states that Officer Meldrum arrived at Terry and Valerie Neff's home about an hour after Mark was taken into custody. Contrary to the government's assertion, however, this record cite refers to testimony of Terry Neff who, in response to being asked if he went down to the police station after Mark was taken into custody, stated that he did so "about an hour later." Tr. 171. Obviously this has nothing to do with when Meldrum went to Terry and Valerie's home to retrieve the stolen stereo. So at a minimum two of the three answers injected extra-record evidence into the jury's deliberations.

---

**3.** Rule 52 provides:

(a) HARMLESS ERROR. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

The right to be free from this extra-record infiltration is one of the protections afforded by the Sixth Amendment's guarantee of trial by jury. In evaluating the nature and extent of this guarantee, the Supreme Court has stated: "in the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965). The corollary of this is that the jury, in reaching its verdict, has a duty to consider only that evidence which is presented in open court, and not that which comes from outside sources. *See e.g. United States v. Rana,* 944 F.2d 123, 126 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 981, 117 L.Ed.2d 143 (1992) ("it is therefore error for the jury to rely on items not admitted into evidence to reach its verdict."); *United States v. Simmons,* 923 F.2d 934, 943 (2nd Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991) ("facts that relate to a defendant's guilt, but which are not admitted as evidence during trial, should not be exposed to a jury during deliberations."); *United States v. Weisman,* 736 F.2d 421, 424 (7th Cir.1984), *cert. denied,* 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984) ("It is fundamental principle of our jurisprudence that the jury's verdict must be based on evidence received in open court, and not from outside sources."). Should a jury base its verdict in whole or in part on evidence derived from extraneous sources, then to the degree it has done so, the defendant will have effectively lost the rights of confrontation, cross-examination, and of assistance of counsel—in other words, the guarantee of trial by jury. *See Hughes v. Borg,* 898 F.2d 695, 700 (9th Cir. 1990).

The cases cited above, as well as others we have found, all involved circumstances where an individual, for example, the bailiff, or one of the jurors themselves, brought into the jury's deliberations material that had not been offered into evidence and was therefore outside the record. Our research has not revealed, nor has either party shown us, a case in which a district judge himself provided the extraneous evidence that went into the jury's deliberations. The fact that it was the judge, as compared to a lesser figure, who appeared to introduce the outside material in this case does not change the fact that it was error to do so. In fact, it probably was even more significant. In criminal trials, "[t]he influence of the trial judge on the jury is necessarily and properly of great weight." *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1945). Surely it is not a stretch of the imagination to assume that when a judge conclusively establishes certain nonexisting facts as a matter of record, a jury would feel free to accept the judge's word on the matter without ever going back to the evidence they had before them and decide if what the judge said was correct. Therefore, we find that by answering the jury's questions with facts not in evidence, the judge violated Neff's Sixth Amendment right to trial by jury.

This being a constitutional error we must assess its harmlessness under the elevated standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires that before we dismiss the error as harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. This requires examining the prosecution's case against Neff. To convict Neff under 18 U.S.C. § 922(g)(1), the government had to prove beyond a reasonable doubt that Neff, as a convicted felon, knowingly possessed a firearm, and that this firearm was in or affected interstate commerce. That Neff was a convicted felon was uncontested. Likewise, there was no dispute over whether the firearm was in or had affected commerce. What was contested was whether Neff knowingly possessed the gun. To prove this element, the government chose two lines of attack. First, the government relied upon Officer Meldrum's testimony that under questioning Neff twice admitted that "the gun is mine." In the alternative, the government attempted to prove that Neff was in "constructive possession" of the gun by virtue of it being found among his belongings

within a very short period of time following his arrest. In fact, from our review of the trial transcript, the government seemed to put most of its eggs in this basket by emphasizing, both during closing argument and rebuttal, that the gun was found in the paper sack, the same sack which Terry and Valerie observed him bring into their house when he first arrived, and the same sack that contained the stolen stereo on the day Neff was arrested.

Against this backdrop we come back to the jury's questions. It seems likely that, by asking its questions, the jury was not comfortable basing its verdict solely upon Neff's alleged admission to Officer Meldrum. Instead, it appears that the jury, if it was going to convict Neff at all, was going to do so under the government's theory of constructive possession, and may have been concerned whether during the period of time between Neff's arrest and Meldrum's subsequent arrival Neff or someone else may have had access to the sack. Of course we cannot conclusively say just what the jury had in mind when it asked its questions, but, based on the time noted in the margin next to the judge's responses, Ex. 56, as well as the time indicated by the Clerk in the transcript, Tr. 256, we can say that immediately after receiving the judge's written responses, the jury arrived at its verdict. Therefore, the district judge's factual findings could well have impermissibly influenced the jury's verdict, and because of this, we are unable to declare that this violation of Neff's Sixth Amendment right to trial by jury was harmless beyond a reasonable doubt.

We emphasize that every communication with the jury outside the presence of the defendant will not necessarily violate the Sixth Amendment. This case reaches that threshhold because there is no record showing who was present when the answers to the jury's questions were determined nor how whoever was present came up with the answers. And since the answers contained facts not in evidence, facts which could have influenced the jury's decision, the Sixth Amendment was clearly breached.

### III. Conclusion

The district court's finding of fact violated Neff's Sixth Amendment right to trial by jury, and from our review, cannot be countenanced as harmless error. Therefore, we REVERSE and REMAND.