In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2084

JOHNNY J. JONES,

*Petitioner-Appellant,*

*v.*

DAN CROMWELL, Warden,*

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-00712-BHL — **Brett H. Ludwig**, *Judge.*

———————————

ARGUED NOVEMBER 30, 2022 — DECIDED JULY 28, 2023

———————————

Before WOOD, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

---

* After filing his petition, Jones was transferred from Stanley Correctional Institution to New Lisbon Correctional Institution. Lizzie Tegels, New Lisbon's interim warden at the time this appeal was briefed and argued, was substituted for Reed Richardson as respondent. We have substituted Dan Cromwell, the current warden of New Lisbon, for Lizzie Tegels. FED. R. APP. P. 43(c).

JACKSON-AKIWUMI, *Circuit Judge*. Johnny Jones was ar-
rested and interrogated for his role in a fatal hit-and-run acci-
dent in Milwaukee, Wisconsin. Jones maintains he asked for
a lawyer during the interrogation; the state disagrees. In any
event, it is undisputed that he never got a lawyer and made
incriminating statements to the police. Jones later moved to
suppress those statements on the ground that their use would
violate his Fifth Amendment rights because he invoked, but
was denied, his right to counsel. His suppression motion
failed in the state trial court and on appeal too: The Wisconsin
Court of Appeals held that Jones had not unequivocally in-
voked his right to counsel because although he insists he
asked for a lawyer, he referenced public defenders, according
to the court, in a joking manner. Jones now seeks a writ of
habeas corpus challenging his conviction, but we must deny
his request because his question about a lawyer, whether ear-
nest or in jest, was too ambiguous to invoke his right to coun-
sel under Supreme Court law.

**I**

After a New Year's Eve hit-and-run left one person dead
and another injured in 2009, Milwaukee police homed in on
Jones as the culprit. A criminal complaint was issued soon af-
ter. Jones turned himself in on January 17, 2010, and an inter-
rogation by two officers took place early the next morning, at
approximately 1:18 a.m.

The record on appeal contains an audio recording of the
interrogation. At the outset, the officer leading the interview
read Jones his *Miranda* rights. The officer informed Jones that
he had the right to consult with a lawyer before questioning
and have a lawyer present during questioning. Jones was told
that if he could not afford a lawyer, one could be appointed

at the public's expense "before or during any questioning, if [he] so wish[ed]." The officer explained that if Jones elected to begin answering questions without a lawyer, he had the right to stop the interview at any time and request a lawyer.

After reading Jones his *Miranda* rights, the officer asked if Jones would be willing to answer questions. Jones responded that he wanted to "real bad" but hesitated. He asked the officer what penalty he was potentially facing. The officer refused to answer, asking multiple times if Jones wanted to proceed with questioning and "how do you want to do this?" When the officer asked if Jones wanted to hear him out, Jones said yes, and the officer told Jones that others had placed him at the scene of the accident. Confronted by a silent Jones, the officer attempted to get him to talk: He told Jones that police knew Jones fled because he was scared, Jones did the right thing turning himself in, and it was important for Jones to get his side of the story on record because nobody else could "speak for [him]." After saying he felt horrible, Jones asked the detective, "So y'all can get a public pretender right now?" After some laughter, one of the detectives responded, "You said it right, pretender … they're called public defenders." After more chuckling (by which person or persons it is impossible to tell), Jones responded, "Oh yeah." At that point the detective told Jones: "Obviously due to the time right now, we can't … um." Jones then asked again, "How, how much time is it anyway, you face off of reckless homicide?" The detective told Jones that he believed the maximum punishment was 15 years in prison. Jones proceeded to tell the detectives what happened, implicating himself.

Before trial, Jones filed a motion seeking to suppress his incriminating statements, arguing that his question about

getting a "public pretender" was an unequivocal invocation of his right to counsel at which point all questioning should have ceased. The trial court denied the motion, concluding that the record indicated that Jones jokingly referenced a "public pretender," and such a joke cannot constitute a genuine request. Once his confession was admitted, Jones decided to plead guilty to three charges: homicide by negligent operation of a motor vehicle, WIS. STAT. § 940.10(1); hit-and-run resulting in death, *id.* §§ 346.67(1), 346.74(5)(d); and hit-and-run resulting in great bodily harm, *id.* §§ 346.67(1), 346.74(5)(c).

On appeal, Jones challenged his conviction, contending it was based on a confession obtained in violation of his right to counsel under the Fifth Amendment. The state appellate court affirmed. Citing *Davis v. United States*, 512 U.S. 452, 459 (1994), the appellate court noted a request for counsel must be "unambiguous," and held that Jones's request jokingly referenced "public pretenders," so it was "ambiguous by its very nature." The appellate court agreed with the trial court's finding that Jones's request was not unambiguous because, according to the trial court, Jones joined the detectives in laughter and continued the conversation unprompted, asking about the maximum sentence.

Jones appealed again but the Wisconsin Supreme Court denied his application for review. He then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court determined that it could not conclude that the state appellate court incorrectly applied federal law, or that it reached erroneous factual conclusions. But, acknowledging that reasonable jurists might reach a different conclusion, the court issued a certificate of appealability.

## II

To protect the right against compulsory self-incrimination, suspects subject to custodial interviews have a right to consult with an attorney and have one present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 469–72 (1966); *Davis*, 512 U.S. at 457. For *Miranda*'s protections to apply, the suspect must, "at a minimum, [make] some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (emphasis omitted). Should that statement ultimately be ambiguous, indicating that "the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. But if a suspect unambiguously requests counsel at any time during the interview, police must cease questioning until a lawyer has been made available or the suspect reinitiates communication. *Id.* at 458.

Although a suspect must invoke his Fifth Amendment rights unequivocally, "no ritualistic formula or talismanic phrase" is required. *Emspak v. United States*, 349 U.S. 190, 194 (1955); *see also Davis*, 512 U.S. at 459 (a suspect need not "speak with the discrimination of an Oxford don"). Whether a suspect invokes the right to counsel is an objective inquiry; courts must ask if a reasonable officer would understand the suspect's statements as an unequivocal or unambiguous request for counsel. *Davis*, 512 U.S. at 458–59. In undertaking this inquiry, a court may look at context to interpret an invocation when the suspect's words alone are ambiguous as understood by ordinary people. *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987). But even then, courts must not use context to turn an

unambiguous statement into an ambiguous one in "disregard of the [statement's] ordinary meaning." *See id.* at 529–30.

To succeed with his habeas petition, the Antiterrorism and Effective Death Penalty Act (AEDPA) requires Jones to show either that the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of" the Supreme Court law summarized above, or that the state court's analysis "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). This is a deferential and "difficult to meet" standard, *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and even if one of these two statutory requirements is met, "a petitioner … must still … persuade a federal habeas court that 'law and justice require' relief," as the granting of habeas relief is a discretionary exercise. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (quoting 28 U.S.C. § 2243). If a petitioner cannot make both a statutory and discretionary showing, we must deny relief. *Id.*

### III

Having listened to the audio recording of Jones's interrogation, we are wary of accepting the state court's factual findings in this case. In our estimation, it is impossible to tell who is laughing in response to Jones's reference to a "public pretender." Furthermore, Jones's tone throughout the interview is serious, betraying no hint of jest. In short, we find it difficult to conclude, as the state court did, that Jones was making a joke when he asked "So y'all can get a public pretender right now?" And even if Jones's question had been partly in jest, we are skeptical of the state court's conclusion that a joke is, by its very nature, ambiguous in all cases. Given these flaws,

we are willing to accept Jones's argument that he earnestly intended to refer to a public defender such that his question really should be understood to have been, "So y'all can get a public *defender* right now?"

Consequently, we proceed under the assumption that Jones has successfully navigated the second pathway to habeas relief under AEDPA: proving that the state court made an unreasonable determination of the facts. Unfortunately for Jones, even his preferred reading of the question—"So y'all can get a public [defender] right now?"—is insufficient to invoke his right to counsel under current Supreme Court law. A reasonable officer confronted with this question could suppose Jones was asking whether an attorney could be contacted at that moment rather than asking that an attorney actually be produced. This ambiguity dooms Jones's argument that his Fifth Amendment rights were violated. For as we explained above, any request for counsel must be unambiguous, otherwise police have no constitutional obligation to cease questioning. *Davis*, 512 U.S. at 459. Because ambiguity dooms Jones's argument even if the state court had read his question as a serious inquiry, not a joke, Jones cannot show that "law and justice" require relief, and we decline to exercise our discretion to grant his habeas petition despite the flaws in the state court's factual findings.

Jones argues that specific language in his question— namely "can" and "right now"—shows he clearly expressed a present desire to consult with an attorney. *See United States v. Shabaz*, 579 F.3d 815, 819 (7th Cir. 2009) ("A common point among the statements that have been deemed insufficient is that they do not clearly imply a present desire to consult with counsel.") (cleaned). Indeed, our court has found many times

that statements including the words "can" and "right now" sufficiently invoke the right to counsel. *See United States v. Hunter*, 708 F.3d 938, 948 (7th Cir. 2013) ("Can you call my attorney?"); *United States v. Wysinger*, 683 F.3d 784, 795–96 (7th Cir. 2012) ("I mean, but can I call [a lawyer] now? That's what I'm saying."); *United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005) ("Can I have a lawyer?"); *Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994) (citing approvingly to Ninth Circuit cases holding that "I have to get me a good lawyer, man. Can I make a phone call?" and "Can I talk to a lawyer?" are unambiguous requests for counsel).

In many ways, Jones's question resembles those in our cases cited above. But Jones's question contains an ambiguity because it began with the word "So," which suggests he was perhaps drawing a clarifying conclusion from the *Miranda* warning he had just heard. That warning, remember, indicated he could request a lawyer who would be appointed at the public's expense, but did not specify when the appointment would occur. Jones's question also contains an ambiguity because the verb "can" may be used both to connote an ability or capacity to do something and to request permission. *Can*, Oxford English Dictionary, OXFORD UNIVERSITY PRESS (3d ed. 2017). Jones placed the "can" *after* the "y'all" ("So y'all can get a public [defender] right now?"), suggesting once again that he might have been seeking to clarify the police's capacity to organize a lawyer for him. By contrast, if Jones intended to request a lawyer, he might have phrased it with the "can" *before* the "y'all" (as in "can y'all get a public defender right now?"), more closely aligning with questions we have found unambiguous in the past. In short, the ambiguity plaguing Jones's case and not the other cases he has cited is this: He could have been asking police to contact a lawyer on his

behalf *or* merely wondering whether it would be possible for police to contact a lawyer at that moment if he did want one.

Given this ambiguity, we are permitted to look to context to consider whether Jones was clearly invoking his right to counsel. *See Barrett*, 479 U.S. at 529. Here, the context confirms the problems confronting Jones's argument. The police had given Jones a boilerplate explanation that, if he wanted, counsel could be appointed on his behalf. But the interrogation took place during the wee hours of the morning. Thus, it would have been as conceivable to a "reasonable officer," *Davis*, 512 U.S. at 459, that Jones was actually asking for a lawyer, as it was conceivable that he was seeking clarification of his basic rights—that is, a confirmation that the police are capable of doing what they said they could, which is organize a lawyer for him, even though it was so early in the morning. Indeed, the latter appears to be how the officer interviewing Jones understood the question: He immediately began explaining that, given the late hour, the police would not be able to contact an attorney.

With two plausible interpretations of Jones's question, a reasonable officer would not understand Jones's request as unequivocal or unambiguous. *See Davis*, 512 U.S. at 459. This boils down to the conclusion that Jones—as far as the Supreme Court is concerned—did not properly assert his Fifth Amendment rights, therefore continued questioning by the police did not violate his constitutional rights. *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (holding that continued questioning violates Fifth Amendment if suspect clearly asserts right to counsel).

To be clear, the officer's response to Jones that the police could not contact a lawyer in the wee hours of the morning

strikes us as a half-truth. And even assuming an attorney could not be contacted at the moment, a complete answer would have explained to Jones when an attorney could be made available and reminded him that any interaction with the police would cease until then. Perhaps with this more complete answer Jones would have opted to unequivocally request counsel and wait. But the adequacy of the police's elaboration of Jones's right to counsel is not before us, only whether he unambiguously invoked that right. Perhaps understandably, based on the subpar information the police provided him, he did not.

We do not condone the police practice here either. The Supreme Court has explained that when a suspect makes an ambiguous or equivocal reference to counsel, "it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Davis*, 512 U.S. at 461. Jones's arguable request for clarification of his right to counsel should have at least put police on notice that he *might* be interested in exercising that right. The officers should have explained adequately the process of appointing counsel and taken a moment to clarify exactly what Jones wanted. Doing so would have had little cost—a few minutes more in the interrogation room—but would have added immeasurable value in terms of respecting Jones's rights and the Constitution. But as prudent as clarifying ambiguous requests for counsel may be, there is currently no requirement that police do this. *Smith v. Illinois*, 469 U.S. 91, 95–96 (1984). Until there is, the procedures here did not violate Jones's constitutional rights under Supreme Court law. *See* 28 U.S.C. § 2254(a) (habeas relief only available for prisoners "in custody in violation of the Constitution or laws or treaties of the United States").

**IV**

Even accepting that Jones meets AEDPA's statutory requirement that the state court's analysis was based on an unreasonable determination of the facts, we cannot conclude that Jones's Fifth Amendment rights were violated. Jones's question was an ambiguous one, and the *Miranda* line of cases sanctions continued police questioning when a suspect ambiguously invokes the right to counsel. The request for counsel must be unambiguous or unequivocal. We therefore decline to exercise our discretion to grant a writ of habeas corpus and AFFIRM the district court's order.